UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JONATHAN IRONS,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        No. 4:21 CV 293 RWS
                                   )
JOHN NESKE, et al.,                )
                                   )
            Defendants.            )

## MEMORANDUM AND ORDER

This case arises out of the investigation, prosecution, and wrongful conviction of Plaintiff Jonathan Irons for the assault of Stanley Stotler in the late-1990's.  Irons asserts claims under 42 U.S.C. § 1983, as well as supplemental state law claims under Missouri law, against the City of O'Fallon, St. Charles County, and several officers of the O'Fallon Police Department and St. Charles County Sheriff's Department.  The case is before me on Irons' renewed motion for the appointment and substitution of a defendant ad litem for the estate of Michael Hanlen.  Doc. 90. For the reasons discussed below, Irons' renewed motion will be denied.

## BACKGROUND

On January 14, 1997, Stanley Stotler returned to his home and discovered an intruder in his closet.  After being ordered to come out, the intruder exited, shot Stotler twice, and fled.  Stotler's assault was then investigated by the O'Fallon Police

Department and St. Charles County Sheriff's Department.  At some point, officers determined that Irons had been in Stotler's neighborhood on the night of the shooting.  Irons was later arrested and prosecuted for Stotler's assault.  Although Irons maintained his innocence, he was convicted on October 20, 1998, and was sentenced to fifty years in prison.  More than twenty years later, compelling evidence was discovered that casted doubt on Irons' conviction.  Based on this newly discovered evidence, a Missouri court granted Irons' petition for a writ of habeas corpus and vacated his conviction on July 1, 2020.

On March 8, 2021, Irons filed this lawsuit against the City of O'Fallon, St. Charles County, and several officers of the O'Fallon Police Department and St. Charles County Sheriff's Department, alleging the officers fabricated and suppressed evidence to frame him for Stotler's assault.  In his complaint, Irons named the estate of Michael Hanlen, a former officer of the O'Fallon Police Department, as a defendant.  Irons named Hanlen's estate as a defendant because Hanlen died on February 12, 2018—more than two years before Irons' conviction was vacated and more than three years before Irons filed this lawsuit.

On April 30, 2021, Irons filed a motion for the appointment and substitution of a personal representative for Hanlen's estate.  In support of his motion, Irons stated that Hanlen did not have an open estate and appeared to have not opened an estate.  Irons also stated that he was unable to ascertain Hanlen's personal

representative or successor in interest.  Irons requested that I appoint a personal representative or successor in interest (to be identified by the City of O'Fallon) because his claims against Hanlen survived Hanlen's death.  Irons requested in the alternative that I appoint a defendant ad litem, arguing that such an appointment was authorized by Mo. Rev. Stat. § 537.021[1] because the City of O'Fallon maintained an insurance policy that covered Hanlen as a law enforcement officer.

Irons' motion was denied without prejudice.  In denying Irons' motion, I agreed that his claims against Hanlen survived Hanlen's death.  However, I found that I did not have the authority to appoint a personal representative or successor in interest because § 537.021, which governs the process by which claims may be brought against a deceased individual in Missouri, requires a personal representative be appointed by a probate court.  I also found that the appointment of a defendant ad litem would be inappropriate because Irons failed to provide sufficient information

---

[1] Section 537.021 provides, in relevant part, that:

> The existence of a cause of action for an injury to property, for a personal injury not resulting in death, or for wrongful death, which action survives the death of the wrongdoer or the person injured, or both, shall authorize and require the appointment by a probate division of the circuit court of:
> …
> A personal representative of the estate of a wrongdoer upon the death of such wrongdoer; provided that, if a deceased wrongdoer was insured against liability for damages for wrongdoing and damages may be recovered from the wrongdoer's liability insurer, then the court in which any such cause of action is brought shall appoint at the request of the plaintiff or other interested party a qualified person to be known as a defendant ad litem.

Mo. Rev. Stat. § 537.021.1(2).

and evidence—specifically, information as to whether § 537.021 applies to his claims and evidence demonstrating that Hanlen was insured against liability for wrongdoing.  I granted Irons one month to refile a motion for the appointment and substitution of a defendant ad litem, accompanied by the necessary information and evidence.  I also ordered Irons to provide the name of a proposed defendant ad litem and to describe the individual's qualifications and willingness to act as such.

On July 13, 2021, Irons filed a motion for an extension of time to comply with my order.  In his motion, Irons stated that he intended on filing a petition in Missouri probate court for the appointment of a personal representative for Hanlen's estate, and he requested a period of seven days following the entry of an order in probate court to file a motion in this case for the appointment and substitution of a defendant ad litem.  Irons' request was granted.  A couple of months later, Irons filed a petition for letters of administration for purposes of this litigation (i.e., a petition for the appointment of a personal representative) in the probate division of the Circuit Court of Saint Louis County, Missouri (the "probate court"), pursuant to § 537.021.  Irons also filed a bond for a proposed personal representative: Robert Parson, Jr.

On April 11, 2022, the probate court denied Irons' petition,[2] finding § 537.021 did not apply to his claims and that his petition was untimely under § 473.050.6,

---

[2] The petitioner in the probate action was Robert Parson, Jr., but there is no dispute that the action was pursued on behalf of and for the benefit of Irons.  See Doc. 90 at pp. 2 & 10.

which states: "Except as provided in … section 537.021, no letters of administration shall be issued unless application is made to the court for such letters within one year from the date of death of the decedent." The probate court found that § 537.021 did not apply to Irons' claims because the claims accrued after Hanlen's death. Irons filed a notice of appeal to the Missouri Court of Appeals shortly after the probate court entered its judgment. Irons also filed a renewed motion in this case for the appointment and substitution of a defendant ad litem.

## DISCUSSION

In his renewed motion, Irons requests that I appoint a defendant ad litem or other representative for Hanlen's estate. Irons argues that the appointment of a defendant ad litem is authorized by § 537.021 because (1) as a law enforcement officer, Hanlen was covered by the City of O'Fallon's insurance policies; and (2) § 537.021 applies to any claim that survives the death of a party, regardless of whether the claim accrues before or after the party's death. Irons argues in the alternative that, if I find § 537.021 applies only to claims that accrue before the party's death, I should appoint a representative for Hanlen's estate pursuant to federal common law because § 537.021 is inconsistent with 42 U.S.C. § 1983.

The City of O'Fallon, the only defendant to file a response to Irons' initial motion for the appointment and substitution of a personal representative, opposes Irons' renewed motion. The City of O'Fallon argues that Irons' renewed motion

should be denied because (1) I should abstain from further ruling on Mo. Rev. Stat. § 537.021 and give full faith and credit to the probate court's judgment denying Irons relief; (2) § 537.021 does not permit the appointment of a defendant ad litem where, as in this case, the claim accrues after the party's death; and (3) federal common law does not justify ignoring § 537.021.

Having considered the parties' arguments and reviewed the applicable law, I find that it would be improper to appoint a defendant ad litem or other representative for Hanlen's estate in this case.

### A.    § 537.021

Appointing a defendant ad litem pursuant to § 537.021 would be improper. As an initial matter, I note that the Full Faith and Credit Statute requires that I give preclusive effect to the probate court's judgment as to whether § 537.021 applies to Irons' claims.  The Full Faith and Credit Statute, 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Const. Corp., 456 U.S. 461, 466 (1982).  This requires a federal court to give "issues actually litigated in a state-court proceeding … the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83 (1984).  Here, the issue of whether Mo. Rev.

Stat. § 537.021 applies to Irons' claims was litigated in the probate action, and the probate court found that the statute does not apply.  The probate court's judgment with respect to that issue should therefore be given the same preclusive effect in this case that it would be given in Missouri courts.

Under Missouri law, there are two types of preclusion: res judicata (claim preclusion) and collateral estoppel (issue preclusion).  The relevant type of preclusion here is collateral estoppel.  When considering the appropriateness of collateral estoppel, Missouri courts consider: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present case; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.  King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 500 (Mo. banc 1991).  Missouri courts will apply collateral estoppel to an issue if all four elements are satisfied and the issue was "necessarily and unambiguously decided" in the prior suit.  Id. at 501.

Each element required for collateral estoppel to apply is satisfied here.  First, the issue decided in the probate action—whether § 537.021 applies to Irons' claims—is identical to the issue presented in this case.  Second, the probate action

resulted in a judgment on the merits.  Third, while Irons was not a party to the probate action, he was in privity with the petitioner.[3]  Fourth, in the probate action, Irons had a full and fair opportunity to litigate whether § 537.021 applies to his claims.  And finally, the issue of whether § 537.021 applies to Irons' claims was necessarily and unambiguously decided by the probate court because Irons' petition was brought pursuant to the statute.  Because each element is satisfied and Irons would be collaterally estopped in Missouri courts from relitigating whether § 537.021 applies to his claims, collateral estoppel must be applied here.  The probate court found that § 537.021 does not apply to Irons' claims, and that judgment will be given preclusive effect in this case.

Moreover, even if collateral estoppel did not apply in this case, I would still find it improper to appoint a defendant ad litem pursuant § 537.021 because, as I indicated in my order denying Irons' initial motion for the appointment and substitution of a personal representative, § 537.021 does not apply to claims that accrue after the party's death.  "Section 537.021 allows for an action to be filed against a defendant ad litem when a person otherwise liable for damages for wrongdoing is deceased[] but was insured against liability for damages." Litton v. Kornbrust, 85 S.W.3d 110, 116 (Mo. Ct. App. 2002) (internal quotation marks

---

[3] As noted above, Robert Parson, Jr. was the petitioner in the probate action, but there is no dispute that the action was pursued on behalf of and for the benefit of Irons.  See Doc. 90 at pp. 2 & 10.

omitted).  The statute only applies, however, when "a cause of action accrues first, and the party dies afterward."  Wood v. Hudson, 823 S.W.2d 158, 161 (Mo. Ct. App. 1992); see also Burton v. St. Louis Bd. of Police Com'rs, No. 4:10cv1540 TCM, 2011 WL 620832, at *3 (E.D. Mo. Feb. 11, 2011).

There is no dispute that § 537.021 does not apply to Irons' claims under this interpretation of the statute because Irons' claims accrued after Hanlen's death.  See Heck v. Humphrey, 512 U.S. 477, 489–90 (1994) ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."); Doc. 81-2 (noting Hanlen died on February 12, 2018, and Irons' claims accrued on July 1, 2020, when his conviction was vacated).  However, Irons argues that the decision of the Missouri Court of Appeals in Wood—where the court explained that § 537.021 "applies when a cause of action accrues first, and the party dies afterward"—has been wrongly interpreted.  In essence, Irons argues the statement of law in Wood is incorrect as a general matter and that the holding should be limited to the specific facts of the case.

Although there is a limited number of court decisions interpreting § 537.021, I decline Irons' invitation to adopt an interpretation of the statute that is inconsistent with the holding in Wood.  Federal courts "are not bound to follow the decisions of intermediate state courts when interpreting state law," but such decisions are "highly persuasive."  First Tenn. Bank Nat. Ass'n v. Pathfinder Exploration, LLC, 754 F.3d

489, 490–91 (8th Cir. 2014).  For this reason, "[i]ntermediate state court decisions should not be disregarded 'unless [the federal court is] convinced by other persuasive data that the highest state court would decide the issue otherwise.'"  United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003) (quoting Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967)).  Here, Irons has not presented persuasive data indicating that the Missouri Supreme Court would find that § 537.021 applies to claims that accrue after the party's death.  It would therefore be inappropriate to apply such an interpretation of the statute in this case.

### B.    Federal Common Law

Appointing a representative pursuant to federal common law would also be improper.   As Irons acknowledges, in determining whether to appoint a representative for Hanlen's estate, I must look to Missouri law because 42 U.S.C. § 1983 is silent on the process by which a plaintiff may bring a claim against a deceased individual.  See 42 U.S.C. § 1988 (providing that, if a federal civil rights statute is "deficient in the provisions necessary to furnish suitable remedies and punish offenses," federal courts should turn to "the common law, as modified and changed by the constitution and statutes of the [forum] State").  Under Missouri law, the relevant statute is Mo. Rev. Stat. § 537.021.  For the reasons discussed above, appointing a representative for Hanlen's estate pursuant to that statute would be

improper.  Accordingly, I will turn to Irons' second argument that a representative should be appointed for Hanlen's estate pursuant to federal common law.

Irons correctly notes that 42 U.S.C. § 1988 instructs federal courts to fill gaps in federal civil rights statutes with state law "as long as that law is not inconsistent with federal law." Hardin v. Straub, 490 U.S. 536, 538 (1989).  Irons argues that, if Mo. Rev. Stat. § 537.021 does not permit the appointment of a representative for Hanlen's estate, the Missouri statute should be disregarded in favor of federal common law because it is inconsistent with 42 U.S.C. § 1983.  In determining whether Mo. Rev. Stat. § 537.021 is inconsistent with 42 U.S.C. § 1983 to such an extent that it should be disregarded, I find the Supreme Court's decision in Robertson v. Wegmann, 436 U.S. 584 (1978) instructive.

In Robertson, the Supreme Court considered a challenge to a Louisiana survivorship statute that provided for the survival of certain actions only in favor of a spouse, child, parent, or sibling of a deceased plaintiff.  Id. at 587.  The plaintiff in Robertson filed an action under § 1983 and died before trial, so the executor of his estate was substituted.  Id. at 586–87.  The defendants then moved to dismiss the action because the executor lacked the requisite relationship to the plaintiff.  Id. at 587.  The district court denied the defendants' motion, finding the Louisiana survivorship statute was inconsistent with federal law.  Id.  Instead of applying the Louisiana statute, the district court applied "a federal common law of survival in

11

civil rights actions in favor of the personal representative of the deceased." Id.  The

district court's decision was later affirmed on interlocutory appeal.  Id.

The Supreme Court reversed.  In its decision, the Supreme Court explained

that "[i]n resolving questions of inconsistency between state and federal law raised

under § 1988, courts must look not only at particular federal statutes and

constitutional provisions, but also at the policies expressed in them."  Id. at 590

(internal quotation marks omitted).  The Supreme Court stated that "[o]f particular

importance is whether application of state law would be inconsistent with the federal

policy underlying the cause of action under consideration."  Id. (internal quotation

marks omitted).  The cause of action under consideration in Robertson arose under

§ 1983, and the Supreme Court noted that the policies underlying § 1983 include

"compensation of persons injured by deprivation of federal rights and prevention of

abuses of power by those acting under color of state law."  Id. at 590–91.

With these policies in mind, and despite the "broad sweep of § 1983," the

Supreme Court found "nothing in the statute or its underlying policies to indicate

that a state law causing abatement of a particular action should invariably be ignored

in favor of a rule of absolute survivorship."  Id. at 590.  Among other things, the

Supreme Court noted that: (1) no claim was made that Louisiana's survivorship

statutes were, in general, inconsistent with the policies underlying § 1983 because

most actions in Louisiana survived a plaintiff's death; (2) while the plaintiff was not

survived by a family member with the requisite relationship to him, few persons are not survived by such a relative; and (3) given that most actions in Louisiana survived a plaintiff's death, "the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality." Id. at 591–92.

Ultimately, the Supreme Court concluded that the availability of a federal remedy "does not mean that a § 1983 plaintiff … must be allowed to continue an action in disregard of the state law to which § 1988 refers [federal courts].  A statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose litigation." Id. at 593.  The Supreme Court stated, however, that its holding was "a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law … has no independent adverse effect on the policies underlying § 1983." Id. at 594.  The Supreme Court noted that "[a] different situation might well be presented … if state law did not provide for the survival of any tort actions … or if it significantly restricted the types of actions that survive." Id. (internal quotation marks and citation omitted).

The Supreme Court's reasoning in Robertson is similarly applicable here. First, any claim that Missouri's survivorship statutes are generally inhospitable to the policies underlying § 1983 is untenable in light of the fact that Missouri law provides for the survival of most actions, including Irons', upon the death of both

13

plaintiffs and defendants.  See Mo. Rev. Stat. § 537.010 ("Action for damages to property to survive regardless of death of either party."); Mo. Rev. Stat. § 537.020 ("Action for personal injury or death to survive regardless of death of either party."). Through Mo. Rev. Stat. § 537.021, Missouri law also provides a process by which claims can be asserted by or against a deceased individual, albeit limited to claims that accrued before the individual's death.[4]

Second, while § 537.021 is inapplicable to Irons' claims because they did not accrue until after Hanlen's death, such a sequence of events is likely not a common occurrence.  To be sure, Irons has not cited any evidence or authority indicating that there is a large category of federal civil rights cases in which the causes of action are unlikely to accrue until after the party's death.[5]  Even with respect to causes of action for wrongful conviction specifically, such as Irons', any argument that they are unlikely to accrue until after the party's death is belied by the fact that all but one of the defendants named in Irons' complaint were alive and capable of being sued once

---

[4] Irons suggests that 42 U.S.C. § 1983's chief goals of compensation and deterrence are entirely frustrated by Missouri law because "Missouri law bars a party from commencing a lawsuit against a deceased tortfeasor without exception."  This is simply an incorrect statement of Missouri law. As explained throughout this Memorandum and Order, if a plaintiff's claims against a deceased tortfeasor accrued before the tortfeasor's death, Mo. Rev. Stat. § 537.021 allows the plaintiff to proceed against a personal representative or defendant ad litem.

[5] Irons contends that "Missouri's approach would mean that, in a large category of federal civil rights cases, Missouri law would not compensate injured plaintiffs and impose liability on the state actors who happened to die prior to the filing of the lawsuit."  This statement confuses the issue, however, because the relevant question with respect to the applicability of § 537.021 is not whether the party died before the filing of the lawsuit.  Instead, the question is whether the party died before the claims asserted in the lawsuit accrued.

14

Irons' wrongful conviction was invalidated—more than twenty years after the defendants' alleged misconduct occurred.

Finally, given that Missouri law provides for the survival of most actions, the fact that an action against a particular defendant might in some circumstances abate does not adversely affect 42 U.S.C. § 1983's role in preventing official illegality. Irons argues that "the state-law regime would create a perverse incentive for officers to ensure that their misconduct and abuse of power results in extraordinarily long sentences such that by the time the misconduct is uncovered, and the injured party could pursue a civil rights lawsuit, the involved officers will have already passed away and cannot be held liable."  This argument is unpersuasive because it relies on the rather farfetched assumptions that state officials would have the ability and desire to select as victims only those persons who could be sentenced to a lengthy term of incarceration and who would not successfully challenge their conviction until after the official's yet to be determined and ultimately uncertain time of death.  Cf. Robertson, 436 U.S. at 592 n. 10.

In sum, although I recognize that the specific facts of this case have left Irons without a remedy against Hanlen under Mo. Rev. Stat. § 537.021, I do not find that the statute is inconsistent with 42 U.S.C. § 1983 to such an extent that it should be disregarded in favor of federal common law.  It would therefore be improper to appoint a representative for Hanlen's estate pursuant to federal common law.

15

## CONCLUSION

Because it would be improper to appoint a defendant ad litem or other representative for Hanlen's estate, Irons' renewed motion will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Jonathan Irons' renewed motion for the appointment and substitution of a defendant ad litem for the estate of Michael Hanlen [90] is **DENIED**.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 21st day of July 2022.